**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Rojas, | No. CV-15-00933-PHX-JJT (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JOHN J. TUCHI, UNITED STATES DISTRICT JUDGE:

Petitioner Richard Rojas has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).

**I.  SUMMARY OF CONCLUSION.**

The Arizona Court of Appeals, prior to *Montgomery v. Louisiana*, 136 S. Ct. 718, 737 (2016), found that Petitioner's natural life sentences were imposed in accordance with the mandates of *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012). But the trial court did not discuss Petitioner's age-related characteristics and whether Petitioner's juvenile status counseled against a natural life sentence, which are expressly required by *Miller*. Because the Arizona Court of Appeals' decision is objectively unreasonable and not harmless, the Court recommends the matter be remanded to the state court for a new sentencing hearing that comports with the principles set forth in *Miller*.

/

/

## II. BACKGROUND.

### a. Factual and Procedural History.

The Arizona Court of Appeals found the following facts and procedural history as true:[1]

> Rojas and two co-defendants, Fernando Castellanos and Jonathon Arias, were indicted on two counts of first-degree murder, each a class 1 felony; two counts of armed robbery, each a class 2 felony and dangerous offense; and conspiracy to commit armed robbery, a class 2 felony and dangerous offense. The charges stemmed from the shooting deaths of Michael Fromme and Amy Hoppes at a carwash located near 59th Avenue and Missouri in Glendale during the early morning hours of March 4, 1999.
>
> Prior to trial, the trial court granted Rojas's motion to sever and ordered that he be tried separately from his co-defendants. Upon trial to jury, Rojas was found guilty on both counts of first-degree murder. The jury additionally found Rojas guilty on the charges of conspiracy and armed robbery of Michael Fromme, but acquitted him of the armed robbery charge relating to Amy Hoppes. The trial court sentenced Rojas to two consecutive terms of natural life imprisonment on the convictions for first-degree murder and to two concurrent, aggravated eighteen-year prison terms on the conspiracy and robbery convictions.

(Doc. 12-2, Ex. H, at 16.)

### b. Direct Appeal.

On May 9, 2001, Petitioner appealed his convictions and sentences. (Doc. 12-1, Ex. E, at 30.) On October 21, 2003, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 12-2, Ex. H, at 29.) On March 15, 2004, the Arizona Supreme Court denied review. (Doc. 12-3, Ex. W, at 139.) On April 7, 2004, the mandate issued. (Doc. 12-2, Ex. L, at 86.)

### c. Petition for Post-Conviction Relief

On June 25, 2013, Petitioner filed a petition for post-conviction relief arguing that "mandatory life without parole sentences for juvenile are unconstitutional (*Miller v. Alabama*, 132 S. Ct. 2455 (2010))." (Doc. 12-2, Ex. K, at 84). On July 9, 2013, the trial court noted that this proceeding was Petitioner's first Rule 32 proceeding, and that it was

---

[1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

untimely. (Doc. 12-2, Ex. L, at 86.) The court addressed Petitioner's argument and dismissed his PCR notice, ruling as follows:

> Defendant is claiming, pursuant to Ariz. R. Crim. P. 32.1(g), that there has been a significant change in the law that if applied retroactively to the defendant's case, would probably affect the outcome. Specifically, Defendant cites *Miller v. Alabama*, 132 S. Ct. 2455 (2012).
>
> The Defendant claims *Miller* constitutes a significant change in the law that applies to his case. For the purpose of this order only, the Court shall consider that *Miller* could be a significant change in the law. Defendant asserts that under *Miller*, a juvenile could not be sentenced to life imprisonment. This is a misreading of *Miller* which does not place a categorical ban on juvenile life sentences without the possibility of parole. Rather, in *Miller*, the Supreme Court ruled that a mandatory life sentence without the possibility of parole was unconstitutional. Hence, the judge or jury must have the opportunity to consider mitigating circumstances such as age prior to imposing either life with the possibility of parole or the harshest sentence possible for a juvenile, that being natural life without the possibility of parole.
>
> In the instant case, the record demonstrates that the age of the Defendant was determined to be a mitigating factor. Even after considering the Defendant's age as a mitigating factor, the Court chose to sentence him to the term of his natural life. Since the sentence of natural life without the possibility of parole was not statutorily mandated and the Court had the discretion to order life with the possibility of parole but chose not to, defendant has failed to demonstrate that *Miller* is a significant change in the law as applied to his case.

(*Id.*).

### d. PCR Motion for Reconsideration.

On July 21, 2013, Petitioner filed a motion for reconsideration, arguing that the imposition of a life sentence without the possibility of parole violated the Eighth Amendment. (Doc. 12-3, Ex. N, at 2.) On July 24, 2013, the Arizona Justice Project filed a "Brief of *Amicus Curiae* in support of Petitioner's motion for reconsideration," requesting the court reconsider its dismissal of Petitioner's PCR notice, appoint Petitioner counsel, and allow Petitioner to file a full Petition for PCR "in order to develop several issues of first impression and statewide importance raised by his case." (*Id.*, Doc. 12-2, Ex. M, at 89.) On July 29, 2013, the trial court denied Petitioner's motion:

> Under Rule 32, an exception to the preclusion rules exists when "there has been a significant change in the law that if determined to apply to the defendant's case would probably overturn the defendant's conviction or sentence." Rule 32.1(g) (emphasis added). Defendant's request for relief

> presupposes that *Miller* applies retroactively, a determination that has not yet been made by this Court or under Arizona law.
>
> Even assuming it is determined that *Miller* has retroactive application, there is an additional legal issue that must be addressed. In this matter, Defendant was sentenced to life without the possibility of release. The *Miller* court did not foreclose the court's authority to enter a sentence of this nature. Rather, *Miller* mandated that mitigating factors such as age must be considered by the Court before it may impose the "harshest sentence" on juvenile offenders.
>
> The record in this matter is clear that the sentencing judge took into account the age of the defendant as part of the sentencing determination (page 13 of sentencing transcript). Therefore, if *Miller* has retroactive application, its requirements regarding mitigation have been met in this matter and there is no basis for defendant to be relieved from the natural life sentence that was imposed upon him.

(Doc. 12-3, Ex. O, at 8.)

### e. Arizona Court of Appeals.

On August 26, 2013, Petitioner filed a petition for review in the Arizona Court of Appeals. (Doc. 12-3, Ex. P, at 10.) On November 12, 2013, the Arizona Justice Project filed another *Amicus Curiae* brief in the Arizona Court of Appeals. (Doc. 12-3, Ex. R, at 49.) On February 12, 2015, the Arizona Court of Appeals granted review, but denied relief:

> Rojas contends the Supreme Court opinion in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), constitutes a significant change in the law that required the trial court to vacate his sentences of natural life. *See* Ariz. R. Crim. P. 32.1(g) (significant change in the law as a ground for post-conviction relief); 32.2(b) (rule of preclusion does not apply to claims for relief based on Rule 32.1(g)). In *Miller*, the Supreme Court held "that mandatory life [sentences] without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. The court further held that a trial court may sentence a juvenile offender convicted of murder to life imprisonment without the possibility of parole so long as the court takes into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 2469.
>
> We assume *arguendo* that *Miller* is retroactive. Even so, we deny relief. *Miller* prohibits *mandatory* life sentences without the possibility of parole for juvenile offenders. *Id.* at 2460. Rojas's sentences to natural life were not mandatory. The trial court knew it had the option to sentence Rojas to natural life or life with a possibility of parole after twenty-five years' imprisonment. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-703(A) (1999). Further, in its determination of which sentence to impose, the trial court acknowledged Rojas's "miserable childhood," and found that his age at the

> time he committed the murders and his lack of prior felony convictions were mitigating factors. Therefore, the court took into account "how children are different" and Rojas's sentences to natural life complied with *Miller*.

(Doc. 12-3, Ex. T, at 102.)

On July 1, 2015, the Arizona Supreme Court denied review. (Doc. 12-3, Ex. X, at 142.)

## III. PETITIONER'S HABEAS PETITION.

On May 22, 2015, Petitioner filed a pro se Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner challenges his natural-life sentences, raising the following three grounds for relief:

1. His life sentences constitute cruel and unusual punishment under the Eighth Amendment, violate Article II of the Arizona Constitution, and are unconstitutional under *Miller*;

2. The state trial court erred by summarily dismissing his PCR proceeding as untimely, failing to appoint him counsel, and depriving him of an opportunity to file a PCR petition; and

3. *Miller* applies retroactively to Petitioner's case.

(*Id.*).

On August 21, 2015, Respondents filed a Response. (Doc. 12.) On April 8, 2016, Respondents filed a Supplement asserting that Petitioner's *Miller* claim is exhausted but any reliance by Petitioner on *Montgomery* expanding his claim would render Petitioner's claims unexhausted. (Doc. 22.) On April 21, 2016, Petitioner filed a Supplemental Brief arguing Petitioner was entitled to resentencing under either *Miller* or *Montgomery*. (Doc. 24.) On May 5, 2016, Respondents filed a Response arguing that because "Petitioner is not requesting a stay of these proceedings to pursue relief on a *Montgomery*/*Valencia*[2] claim in state court," this Court should deny and dismiss the Petition on the merits. (Doc. 25 at 2.) On January 9, 2017, Respondents filed a Supplemental Brief asserting that "*Montgomery* did not expand *Miller*" and requesting the Court resolve the "pure *Miller* claim" or consider granting a stay so Petitioner could

---
[2] *State v. Valencia*, 386 P.3d 392 (Ariz. 2016).

exhaust a *Montgomery* claim. (Doc. 31 at 3-4.) On May 15, 2017, the Court held oral argument in this matter. (Doc. 35.) On May 26, 2017, Petitioner filed a Supplemental Brief. (Doc. 37.) On June 6, 2017, Respondents filed a Response Brief. (Doc. 38.)

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244.

The Petition is timely. *Miller* was decided on June 25, 2012. Petitioner began PCR proceedings on June 19, 2013. (Doc 12-2, Ex. K, at 84.) Petitioner filed this Petition on May 22, 2015, which was prior to the Arizona Supreme Court denying review on July 1, 2015. (Doc. 12-3, Ex. X, at 142.) Respondents concur that the Petition is timely in light of *Montgomery*. (*See* Doc. 12 at 12.)

### a. Standard of Review – Procedural Default.

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's

claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

### b. Standard of Review – Merits.

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009). The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted). *See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair minded disagreement." *Harrington v. Richter*, [] 131 S. Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at ——, 131 S. Ct., at 786 (internal quotation marks omitted).

*Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. *See McNeal v. Adams*, 623 F.3d 1283, 1287-88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). However, the state

court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. *See, e.g.*, *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. *See id.*; *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." *Adamson v. Cathel*, 633 F.3d 248, 255-56 (3d Cir. 2011). *See also Howard v. Clark*, 608 F.3d 563, 567-68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). *See also Murray*, 745 F.3d at 998. Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Clark v. Arnold*, 769 F.3d 711, 724-25 (9th Cir. 2014) (quoting *Burt*, 134 S. Ct. at 15).

**IV.  GROUND ONE.**

Petitioner asserts his natural life sentences constitute cruel and unusual punishment under the Eighth Amendment and are unconstitutional under *Miller*. (Doc. 1 at 6). Petitioner argues that "even though the sentencing court took into account defendant's age, miserable childhood, and no felony convictions, this does not take into account *Miller*'s recent ruling that 'children are categorically different from adults in

terms of culpability and rehabilitation.'"[3] Petitioner alleges the "judge gave no reason why [he was] 'the rare juvenile offender whose crime reflect irreparable corruption.'" (*Id.* at 7.)

### a. *Miller v. Alabama*.

On June 25, 2012, the United States Supreme Court decided *Miller*, which held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. 2469. *Miller* requires that the judge's exercise of discretion be guided by an "individualized consideration" of the offender's "age *and age-related characteristics* and the nature of [his] crime. . . ." *Id.* at 2469-70 (emphasis added). Relevant issues for the judge's consideration could include: the offender's "chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; the "incompetencies associated with youth," such as "his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation." *Id.* at 2468.

The Supreme Court expressed the expectation that, "given all we have said in *Roper*, *Graham*,[4] and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 2469.

---

[3] Petitioner also states that the "possibility for a life sentence with the possibility of parole was not an option in defendant's case as Arizona no longer has parole system in place for crimes committed after January 1, 1994." Petitioner's claim is meritless. The Arizona "legislature passed H.B. 2593, which enacted A.R.S. § 13-716 and amended A.R.S. § 41-1604.09(I), establishing parole eligibility for juveniles sentenced to life imprisonment. *See* 2014 Ariz. Sess. Laws, ch. 156, §§ 2, 3." *State v. Stewart*, 377 P.3d 383, 384 (Ariz. Ct. App. 2016).

[4] *Roper v. Simmons*, 543 U.S. 551 (2005) (invaliding the death penalty for juveniles); *Graham v. Florida*, 560 U.S. 48 (2010) (prohibiting natural life sentence for juvenile, non-homicide offenders).

- 10 -

> That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption . . . ." Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, *we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison*.

*Id.* (citation omitted) (emphasis added).

Petitioner has consistently asserted that his *Miller* claim is exhausted. Petitioner argued "Rojas's petition started as a *Miller* claim in 2013 and has always been a *Miller* claim." (Doc. 37 at 3.) Respondents agree that Petitioner's "pure" *Miller* claim is exhausted.[5]

In sum, *Miller* requires a court do more than consider a defendant's age. A judge must consider a defendant's "age *and* age related characteristics." A judge is not required to make specific findings regarding "irreparable corruption" or "transient immaturity." But a judge must also consider "how [children's] differences counsel against irrevocably sentencing them to a lifetime in prison." Relevant factors for a court to consider include a defendant's immaturity, ability to appreciate risks and consequences, role in the offense, family environment, or prospect of rehabilitation.

### b. *Montgomery v. Louisiana*.

In *Montgomery*, the Supreme Court held that its decision in *Miller* announced a new, substantive constitutional rule that was retroactive on state collateral review. *Montgomery*, 136 S. Ct. at 737. Post-*Montgomery*, Respondents have consistently maintained that any claim asserting *Montgomery* expanded *Miller* is

---

[5] "If Petitioner wishes to rely solely on *Miller*, then the interests would weigh in favor of immediate denial on the merits because Petitioner has already presented a pure *Miller* claim in state court." (Doc. 22 at 4.) After the Arizona Supreme Court's decision in *Valencia*, Respondents argued that "[a]ccordingly, this Court should either resolve Petitioner's habeas petition on the merits under AEDPA as a pure *Miller* claim, or, if Petitioner intends to rely on *Montgomery*, consider whether a stay is appropriate." (Doc. 31.) During oral argument, the State asserted that "if a ruling on the merits occurs in this particular case, it has to be limited to *Miller*, because it's the only clearly-established federal law that existed at the time." (Doc. 39 at 21.) The State again agreed that Petitioner's *Miller* claim was exhausted. (*Id.* at 17-18.)

- 11 -

unexhausted.[6] Respondents assert Petitioner must return to the state courts to exhaust a new *Montgomery* claim. The Court assumes the additional burdens might include "requir[ing] a sentencer to ask: whether the petitioner was among the very 'rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility'" or "requiring that a sentencer decide whether the juvenile offender before it is a child 'whose crimes reflect transient immaturity' or is one of 'those rare children whose crimes reflect irreparable corruption' for whom a life without parole sentence may be appropriate." *Tatum v. Arizona*, 137 S. Ct. 11, 12 (2016) (citing *Montgomery* at 734). Here, the Court can resolve Petitioner's "pure" *Miller* claim without reference to *Montgomery,* and without deciding whether additional "requirements" expanded *Miller*.[7]

### c. The Arizona Court of Appeals Decision.

The Arizona Court of Appeals wrote:

> Rojas contends the Supreme Court opinion in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), constitutes a significant change in the law that required the trial court to vacate his sentences of natural life. See Ariz. R. Crim. P. 32.1(g) (significant change in the law as a ground for post-conviction relief); 32.2(b) (rule of preclusion does not apply to claims for relief based on Rule 32.1(g)). In *Miller*, the Supreme Court held "that mandatory life [sentences] without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. The court further held that a trial court may sentence a juvenile offender convicted of murder to life imprisonment without the possibility of parole so long as the court takes into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 2469.

---

[6] "But assuming arguendo that [*Montgomery* expanded *Miller*], to the extent Petitioner wishes to rely on *Montgomery* to support his *Miller* claim, Petitioner has never presented this claim to the state courts." (Doc. 31 at 3.) "Given that Petitioner is not requesting a stay of these proceedings to pursue relief on a *Montgomery/Valencia* claim in state court . . . this Court should deny Petitioner's habeas petition on the merits for the reasons discussed in Respondents' answer." (Doc. 25 at 2.)

[7] Whether petitioners are required to exhaust a claim that relies upon *Montgomery* also need not be resolved here. *Compare Amaral v. Ryan*, CV-16-00594-PHX-JAT (BSB), 2017 WL 6463052, at *2 (D. Ariz. 2017) (deferring, after several rounds of briefing and motions to reconsider, whether a separate *Montgomery* claim requires exhaustion); *Aguilar v. Ryan*, CV-14-2513 PHX-DJH, 2017 WL 2119490, at *4 (D. Ariz. 2017) (noting respondents "take the position that *Montgomery* did not expand the holding in *Miller*" and did not object to a recommendation that petitioner's *Miller* claim was exhausted).

> We assume *arguendo* that *Miller* is retroactive. Even so, we deny relief. *Miller* prohibits *mandatory* life sentences without the possibility of parole for juvenile offenders. *Id.* at 2460. Rojas's sentences to natural life were not mandatory. The trial court knew it had the option to sentence Rojas to natural life or life with a possibility of parole after twenty-five years' imprisonment. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-703(A) (1999). Further, in its determination of which sentence to impose, the trial court acknowledged Rojas's "miserable childhood," and found that his age at the time he committed the murders and his lack of prior felony convictions were mitigating factors. Therefore, the court took into account "how children are different" and Rojas's sentences to natural life complied with *Miller*.

(Doc. 12-3, Ex. T, at 102.)

At sentencing, the trial court stated the following regarding Petitioner's sentence:

> I did read all the papers, the documents from Orange County. *Yes, you had a miserable childhood*, but, you know, there's a lot of people out there that have had worse childhoods than you and they don't go out and commit double homicide. It's unfortunate that your mother and your grandmother, that they're hurt by this, but the only person that you can blame for them being hurt is yourself for getting involved in this.
>
> As was stated, they can visit you in the Department of Corrections. The families of the two victims will never see them again, never speak to them again.
>
> I have considered the aggravating and mitigating circumstances. *The mitigating circumstances being your age and no prior felony convictions.* The aggravating circumstances being multiple victims of multiple perpetrators, the fact that it was done for pecuniary gain, the effect on the families. And also the manner of the killing, the terror. The witnesses testified to the screaming of Amy Hoppes as she tried to run away from you before you shot her.
>
> Based upon that, the Court believes as to Count 1, the conspiracy to commit armed robbery - - strike that.
>
> As to Count 4, first-degree murder, a class one dangerous felony, the Court sentences the defendant to natural life imprisonment.
>
> That will run consecutive to Count 5, first-degree murder, a class one danger felony, also consecutive natural life imprisonment.

(Doc. 12-3, Ex. U, at 102) (emphasis added).

In *Miller*, the Court stated that "[a]lthough we do not foreclose a sentencer's ability to [impose a natural life sentence] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 132 S. Ct. at 2469. The Court stated that

- 13 -

natural life sentences for juveniles should be uncommon "because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" (*Id*.)

Here, the trial court did not discuss how children are different. The court did not discuss whether Petitioner's juvenile status counseled against a natural life sentence. Instead, the trial court acknowledged that Petitioner had a "miserable childhood" and found his age and lack of prior felony convictions were mitigating factors. But *Miller* changed the way juvenile homicide defendants are sentenced. Ultimately, acknowledging Petitioner's age and miserable childhood is not the same as considering how children are different and whether Petitioner was one of the uncommon juveniles who should be sentenced to natural life in prison.[8]

The Arizona Court of Appeals found that the sentencing judge took into account "how children are different" because the court "acknowledged Rojas's 'miserable childhood,' and found that his age at the time he committed the murders and his lack of prior felony convictions were mitigating factors." (Doc. 12-3, Ex. T, at 102.) The Court is mindful of the substantial deference it must give to state court findings. *See Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (stating district courts must "presume the correctness of state courts' factual findings," and petitioners bear the burden of rebutting this presumption with "clear and convincing evidence"). But in this instance, the Arizona Court of Appeals' conclusion is an objectively unreasonable application of *Miller*.[9] The trial court did not consider Petitioner's "age related characteristics" nor discuss "how

---

[8] In an Order denying reconsideration of the denial of post-conviction relief, the trial judge's ruling does not reflect the additional requirements of *Miller*. The court wrote: "The record in this matter is clear that the sentencing judge took into account the age of the defendant as part of the sentencing determination (page 13 of sentencing transcript). Therefore, if *Miller* has retroactive application, its requirements regarding mitigation have been met in this matter and there is no basis for defendant to be relieved from the natural life sentence that was imposed upon him." (Doc. 12-3, Ex. O, at 8.)

[9] This conclusion does not diminish the heinous nature of Petitioner's offense. The Court expresses no opinion on whether a natural life sentence is appropriate in this case.

- 14 -

children are different." The court did not discuss whether Petitioner's juvenile status counseled against a natural life sentence. *Compare Rue v. Ramos*, CV-15-02669-PHX-PGR, 2017 WL 5192969, at *2 (D. Ariz. 2017) (finding no *Miller* violation where judge considered psychologist's "neuropsychological test battery of petitioner," "petitioner's ability to change over time," and an "argument regarding his underdeveloped prefrontal cortex"); *United States v. Orsinger*, 698 Fed. App'x. 527, 528 (9th Cir. 2017) (affirming that after "a detailed consideration of the evidence viewed through the light of the factors identified in *Miller* and in 18 U.S.C. § 3553(a)" that petitioner "was one of the uncommon juvenile offenders for whom a life sentence was warranted."); *Aguilar v. Ryan*, CV-14-2513 PHX-DJH, 2017 WL 2119490, at *4 (D. Ariz. 2017) (dismissing petition because the sentencing judge, in one of two cases, considered testimony from "legal experts" and "three other witnesses – a neuropsychologist, a psychologist, and a mitigation specialist" regarding juvenile immaturity and petitioner's "intellectual development and maturity" prior to imposing a natural life sentence).

### d. De Novo Review of *Miller* Violation.

If the Court determines that the state court's decision was objectively unreasonable, the Court must review de novo whether Petitioner's constitutional rights were violated. *See Rodriguez v. McDonald*, 872 F.3d 908, 920 (9th Cir. 2017) ("Once we have concluded that the state court's decision was based on an unreasonable determination of facts under 28 U.S.C. § 2254(d)(2), we review the legal issues de novo.").

After examining the evidence, the Court concludes that the sentencing court violated Petitioner's rights under *Miller*. Petitioner was entitled to more than a conclusion that he was a juvenile with a miserable childhood. *See Miller*, 132 S.Ct. at 2455 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime . . . . [I]t mandates only that a sentencer follow a certain process—considering an offender's youth *and* attendant characteristics—before imposing a particular penalty.") (emphasis added). The court properly considered the heinous nature of the offense, the aggravating

factors, the effect on the victims' families, and the terror he inflicted upon a victim before he murdered her. (Doc. 12-3, Ex. U, at 102) But the court did not discuss Petitioner's age related characteristics and how "children are different." *Miller*, 132 S. Ct. at 2469. *Miller* did not impose a formal, fact-finding requirement upon the trial court, but it required more than Petitioner received.

### e. Harmless Error.

The Court must determine whether the error had a substantial and injurious effect on Petitioner's sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The Court may grant relief only if there is "grave doubt" about whether the claimed error had a "substantial and injurious effect or influence" on Defendant's sentence. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id*. at 435. A "reasonable possibility" of prejudice is insufficient. *Brecht*, 507 U.S. at 637.

In this instance it is a close question, but ultimately the Court finds there is grave doubt as to whether the error at Petitioner's sentencing had a substantial and injurious effect on his sentence. If the *Miller* process had been properly followed, there is a substantial and equal chance that Petitioner was the juvenile offender whose crimes reflected unfortunate yet transient immaturity, and not the rare juvenile offender whose crime reflected irreparable corruption. This Court has considered, for example, whether Petitioner would be resentenced to terms of life imprisonment with the possibility of parole after serving consecutive terms of 25 years of imprisonment. Because there is grave doubt as to whether the sentencing court's error was harmless, the Court will recommend this matter be remanded to the state court for a new sentencing hearing that comports with the principles set forth in *Miller*.[10]

---

[10] Petitioner was sentenced to consecutive, natural life sentences. Whether Petitioner is eligible to contest the consecutive nature of his offenses is not before this Court.

## V. GROUND TWO.

Petitioner asserts the trial court erred by summarily dismissing his PCR proceeding as untimely, failing to appoint him counsel, and depriving him of an opportunity to file a PCR petition. (Doc. 1 at 7.) Petitioner's claim is not cognizable. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). *See also Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."). Petitioner's claim is also unexhausted. Petitioner asserts "it was not known to Petitioner that issue was to be raised in subsequent courts." (Doc. 1 at 8.) Petitioner's ignorance is insufficient to excuse his procedural default.

## VI. GROUND THREE.

In Ground Three, Petitioner argues that *Miller* applies retroactively. Petitioner is correct. *Montgomery*, 136 S. Ct. at 734. But Petitioner does not request relief as to Ground Three. In light of the Court's recommendation in Ground One, any request in Ground Three should be denied as moot.

## VII. RESPONDENTS' SUPPLEMENTAL BRIEF.

On June 6, 2017, Respondents submitted a Supplemental Brief "in support of their position that Petitioner's claim is unexhausted, and therefore Petitioner is not entitled to habeas relief." (Doc. 38 at 1.) Respondents submit that Petitioner is entitled to an evidentiary hearing "premised on *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016)," under Arizona Rule of Procedure 32.1(g). (*Id.* at 2.) Because Petitioner may have additional Rule 32 rights, Respondents appear to argue that no claim can be decided by this Court. "In sum, Respondents request this Court to stay these proceedings and afford Petitioner a reasonable opportunity to seek post-conviction relief in state courts, and in the event Petitioner fails to make such effort, dismiss his habeas petition for failure to exhaust state court remedies." (*Id.* at 4.)

To the extent that Respondents are claiming that the Court cannot rule on a "pure" *Miller* claim (as Respondents' described previously), this request is contrary to their previously repeated position that a "pure" *Miller* claim may be resolved on the merits. (*See supra* at n.5.) The Court therefore considers that this request is similar to Respondents' previously stated position that any claim based on *Montgomery* must be returned to the state courts. (*See* Doc. 31 at 4: "Accordingly, this Court should either resolve Petitioner's habeas petition on the merits under AEDPA as a pure *Miller* claim, or, if Petitioner intends to rely on *Montgomery*, consider whether a stay is appropriate.")

If Respondents are now claiming that a "pure" *Miller* claim cannot be decided on the merits, the Court recommends that request be rejected because Respondents previously agreed with this Court that a "pure" *Miller* claim was exhausted. This request would also be inconsistent with the Respondents' position in other *Miller* cases. *See Amaral v. Ryan*, 2017 WL 6463052, at *2 ("Respondents argue that, given that both parties agree that *Montgomery* did not create a new claim, the Court should determine whether Petitioner is entitled to relief based solely on *Miller*."); *Rue v. Ramos*, CV-15-2669, Docket Entry 43 at 1-2 (filed July 11, 2017) (Respondents stating post-*Montgomery* that "there is no dispute that he presented a *Miller* claim in state court. As a result, a *Miller* claim is exhausted.")[11]; *Aguilar v. Ryan*, 2017 WL 2119490, at *2 ("Consequently, because neither side objects to Judge Bade's decision that Petitioner exhausted his state court remedies, this Court will not review that decision.").

## VIII. EVIDENTIARY HEARING.

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011).

## CONCLUSION

Based on the above analysis,

---

[11] Respondents' Response in *Rue* was filed on July 11, 2017, which was after the Supplemental Brief filed here.

- 18 -

**IT IS RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a person in State Custody pursuant to 28 U.S.C. § 2254 (doc. 1) be **GRANTED** as to Ground One, and **DENIED** as to Grounds Two and Three.

**IT IS FURTHER RECOMMENDED** that this matter be remanded to the state court for a new sentencing hearing that comports with the principles set forth in *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 2nd day of February, 2018.

Honorable John Z. Boyle
United States Magistrate Judge